THE UNITED STATES DISTRICT COURT
THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH A. SLOVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1296 (MN) |
| | ) |
| CATHOLIC DIOCESE OF WILMINGTON | ) **FILED UNDER SEAL** |
| and ST. POLYCARP CHURCH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Ronald G. Poliquin, THE POLIQUIN FIRM, LLC, Dover, DE – Attorneys for Plaintiff

Matthew P. Donelson, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE – Attorneys for Defendants.

August 24, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

Pending before the Court is Defendants' "Motion to Enforce Settlement Agreement" (D.I. 14), which asks the Court to enforce the agreement reached during a mediation session with Magistrate Judge Jennifer L. Hall – an agreement that was reduced to writing and signed by both parties before they left the mediation. Plaintiff does not dispute that "a settlement in principle was achieved" at the mediation but argues that she is excused from the agreement because "a material term of the contract" was breached – *i.e.*, that "the Parties will agree to keep the terms and conditions of the resolution confidential." (D.I. 16 ¶ 4). For the reasons set forth below, Defendants' motion is GRANTED.

**I.    BACKGROUND**

**A.    Plaintiff's Allegations**

Plaintiff filed this case in July of 2019, asserting discrimination based on race and gender and claims of retaliation under Title VII. According to the Complaint, "Plaintiff was hired on January 31st, 2011 as a Parish Secretary" at St. Polycarp Church. (D.I. 1 ¶ 8). Plaintiff worked for Reverend Thomas Flowers until his transfer in June of 2015. Thereafter, at some point, Plaintiff began working for Father James Hreha ("Hreha"). (D.I. 1 ¶¶ 16-17). Plaintiff alleges that around May of 2016, her working relationship with Hreha changed for the worse. (D.I. 1 ¶ 18). Her Complaint details various conversations with Hreha and refers to his allegedly "bizarre" and "inane and petty write ups" about Plaintiff's work – including criticisms that she "used a certain color ink that only Hreha could use." (D.I. 1 ¶ 23). Plaintiff alleges that she was disciplined "in full view of the other parish employees, never in a private conversation." (D.I. 1 ¶ 26). She asserts that Hreha made inappropriate sexist and racially offensive comments (*id.* ¶¶ 19-20 & 24-

35) and that, on one occasion in March of 2017, "Father Hreha forced Sloven to sit on the floor with him" (*id.* ¶ 37).

Plaintiff alleges that in April of 2017, she "complained about Father Hreha's harassment to the Human Resources Office of the Diocese" and met with representatives of the HR department to discuss the issues. (D.I. 1 ¶¶ 38-39). Instead of this meeting leading to an improvement in the situation, however, Plaintiff alleges that things became worse as Hreha targeted and bullied her in retaliation for her complaints to HR. (*Id.* ¶¶ 40-52). Continued complaints to HR went unremedied (*id.* ¶¶ 56-59) and, in September of 2017, despite Plaintiff's complaints to HR, Hreha was "promoted" (*id.* ¶¶ 53-54).

Thereafter, in November of 2017, Plaintiff complained of harassment to Monsignor David F. Kelley. (D.I. 1 ¶¶ 60-64). After receiving no response, Plaintiff "filed a dual Charge of Discrimination with the State of Delaware Department of Labor and the Equal Employment Opportunity Commission on December 5, 2017." (*Id.* ¶ 65). On December 8, 2017, Hreha told Plaintiff that "it was time for her to go." (*Id.* ¶ 66).

### B. Settlement Efforts

Judge Hall held a mediation on February 5, 2020. During mediation, an agreement in principle was reached to settle the litigation. (D.I. 14 ¶ 4; *see also* D.I. 16 ¶ 4). The agreement was reduced to writing and signed by all parties. (*See* D.I. 14, Ex. A). On or about February 12, 2020, Defendants' counsel sent draft settlement papers to Plaintiff's counsel via email. (D.I. 14 ¶ 5). After receiving no response, Defendants' counsel "sent a follow up message to Plaintiff's counsel on March 10, 2020." (*Id.*). In response, Plaintiff's counsel notified Defendants "of an alleged breach of the confidentiality provision of the settlement agreement." (*Id.*). Thereafter, "[o]n or about April 16, 2020, Plaintiff's counsel sent a letter to Judge Hall,

advising of the potential violations." (*Id.*; s*ee also* D.I. 14, Ex. B). Counsel for Defendants responded to Plaintiff's letter on April 25, 2020, denying any breach of confidentiality. (D.I. 14, Ex. C).

In their motion papers, Defendants do not reference the purported breach and instead refer this Court to the letters submitted to Judge Hall. Plaintiff, on the other hand, offers three general statements regarding the alleged breach:

> a) Upon information and belief, on or about March 2, two retired priests of the Catholic Diocese of Wilmington (hereinafter the "Diocese"), Father Joseph Drobinski and Father Thomas Flowers, met with a third party where an out-of-court settlement by Defendants was discussed. This discussion included specific details of the present case, including that the settling Plaintiff had been compelled to sit on the floor as punishment.
>
> b) Upon information and belief, on or about March 3, in a conversation with Father Flowers, Joseph P. Corsini (Chief Financial Officer of the Diocese, and a signatory of the Confidential Term Sheet) not only confirmed the settlement, but his participation in same.
>
> c) On or about March 5, Plaintiff spoke with another individual who was aware of specific details of the case and its settlement. These details were not provided by Plaintiff.

(D.I. 16 ¶¶ 6(a)-(c)). On May 6, 2020, Defendants filed the instant motion to enforce the agreement. (*See* D.I. 14).

## II.   DISCUSSION

A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *See Leonard v. University of Delaware*, 204 F. Supp. 2d 784, 786 (D. Del. 2002). A motion to enforce a settlement agreement may be granted if the record shows that "the moving party is entitled to judgment as a matter of law." *Frederick v. Avantix Labs., Inc.*, 2017 WL 995430, at *2 (D. Del. Mar. 14, 2017); Fed. R. Civ. P. 56(a). The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The party

adverse to the motion bears the burden of establishing facts sufficient for the Court to conclude there is a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When parties agree to settle a lawsuit, a binding contract is deemed to have been created. *Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, 2009 WL 1033651, at *5 (D. Del. Apr. 16, 2009); *see also Alston v. Pritchett*, No. 382, 2014, 2015 WL 849689, at *2 (Del. Feb. 26, 2015) ("Delaware law favors settlements and treats them as binding contracts." (citing *Crescent/Mach I Partners, L.P. V. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008))). The party seeking to enforce a settlement agreement has the burden of proving the existence of a contract by a preponderance of the evidence. *See Williams v. Chancellor Care Center of Delmar*, No. 06C-05-146 MMJ, 2009 WL 1101620, at *3 (Del. Super. Ct. Apr. 22, 2009); *see also Montgomery v. Achenbach*, No. 04C-11-048WLW, 2007 WL 1784080, at *2 (Del. Super. Ct. May 17, 2007).

"A contract is created upon the valid acceptance of an offer. Where an attorney of record accepts a settlement offer on behalf of his client, either orally or in writing, a binding contract is created. The attorney is presumed to have the lawful authority to make such an agreement." *Williams*, 2009 WL 1101620, at *3. Here, there is no question that, on February 5, 2020, Defendants offered to resolve this matter for $75,000.00, nor is there any question that Plaintiff and her counsel accepted Defendants' offer by signing the written agreement. Thus, the Court finds that there was a binding contract formed by this offer and acceptance.

Plaintiff's assertion that she should be excused from the settlement because of a purported breach of the terms is unavailing. Indeed, the Court cannot conclude on the record before it that there are any material facts in dispute establishing that a breach occurred. The only specific

reference that Plaintiff offers to support her assertion of breach is that Fathers Joseph Drobinski and Thomas Flowers met with an unnamed third party in which a settlement was discussed and the discussion "included specific [though unstated] details of the present case, including that the settling Plaintiff had been compelled to sit on the floor as punishment." (D.I. 16 ¶ 6(a)). At most, Plaintiff's assertions amount to an allegation that the fact that Plaintiff's case settled was disclosed. Similarly, Plaintiff's references in her response to generic statements that 1) in a conversation with Father Flowers, the CFO of the Diocese "confirmed the settlement" and his participation in it and 2) Plaintiff spoke to an unnamed individual who was aware of unstated "specific details of the case and its settlement" do not establish a breach of confidentiality. The agreement precluded disclosure of "the terms and conditions of the resolution." (D.I. 16 ¶¶ 6(b)-(c); *see also* D.I. 14, Ex. A). The fact that a settlement occurred is not tantamount to a disclosure of the "terms and conditions of the resolution."[1] Indeed, Plaintiff recognizes this, in that Plaintiff's response to the instant motion (and her redacted version) include a public docket entry referencing enforcement of the "settlement agreement."

## III. CONCLUSION

Having found that the parties entered into a binding contract to settle this case and that no breach of a material term of that agreement has been established to excuse Plaintiff's performance

---

[1] In Plaintiff's letter to Judge Hall, Plaintiff repeated the assertions made here (and made repeated references to them) and also added that Plaintiff "spoke with a layperson friend who informed her of an out of court settlement with the former DRE of St. Polycarp. She heard that Fr. Hreha made the employee sit on the floor as punishment. She made mention that she told her husband. She also mentioned a figure of $75,000." (D.I. 14, Ex. A). These allegations are again too generalized for the Court to conclude that a breach of confidentiality occurred. Indeed, the "lay person" is unidentified and the discussions involved a settlement with "the former DRE [Director of Religious Education] of St. Polycarp" – a job and a title that do not describe Plaintiff's position at St. Polycarp.

5

under the agreement, Defendants' motion to enforce the settlement agreement is GRANTED.  An appropriate order will follow.